UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
UNITED STATES OF AMERICA           :
                                   :
                                   :     08 CR 1327 (HB)
         - against -               :
                                   :     OPINION &
                                   :     ORDER
ROMAN ZADIRIYEV                    :
                                   :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

  Defendant Roman Zadiriyev ("Zadiriyev" or the "Defendant"), one of fourteen defendants charged in a five-count indictment with conspiracy to violate the Hobbs Act, 18 U.S.C. §1951, moves to suppress a photo identification made by a potential witness for the prosecution. Zadiriyev moves on the grounds that the photo array was impermissibly suggestive. I held a hearing on the photographic identification on May 13, 2009 and have carefully reviewed the photo array at issue. For the reasons that follow, Zadiriyev's motion is DENIED.

## BACKGROUND

  On November 7, 2008, FBI Special Agents Karma Smith and Michael Zuk interviewed a potential witness for the prosecution. Transcript of May 13, 2009 Hearing ("Tr.") at 5-6. The agents showed the witness a photo array composed of six photographs, one of which was a photograph of the Defendant obtained by the FBI from an out-of-state department of motor vehicles. Id. at 9. The FBI's "photo unit" had created the array by placing the Defendant's photograph on a board together with photographs of five other men. Id. at 11-14. The photo array features full frontal mug-shot style photographs of white men with close-cropped dark hair and moderately fair complexions. GX-1. The men appear to be between the ages of 30 and 40. Id. The backgrounds of the photographs are various shades of gray, and Agent Smith testified that the FBI's photo unit adjusted the background of the Defendant's photograph from blue to gray so as to bear a closer resemblance to the other five photographs. Tr. at 14. Agent Smith testified that she did not know if the photo unit made any other modifications to the photograph of the Defendant although they had the capability to do so. Id.

  Agent Smith testified that she and Agent Zuk showed the photo array to the potential witness in a conference room and followed standard practice by placing the photo array on the

1

conference table and instructing the witness to carefully look at all of the photographs and to tell them if he recognized any of them. Id. at 6-7.  Agent Smith testified that the witness initially did not identify anyone but subsequently stated that the individual in the photograph numbered "2" looked similar to the hijacker although he recalled the hijacker having shorter hair and a thinner nose than the individual in the photograph. Id. at 24-26.  The photograph numbered "2" is that of the Defendant. Id. at 26.  The witness then placed his initials and the date on the photo array near the photograph of the Defendant. Id.

## DISCUSSION

The lynchpin for admissibility of identification testimony is its reliability. United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990) (citing Manson v. Brathwaite, 432 U.S. 98, 106-07 n. 9 (1977)).  A defendant's due process rights include the right "not to be the object of suggestive police identification procedures that create 'a very substantial likelihood of irreparable misidentification'" United States v. Concepcion, 983 F.2d 369, 377 (2d Cir. 1993) (quoting Simmons v. U.S., 390 U.S. 377, 384 (1968)).

The admissibility of evidence of a pretrial identification is analyzed in two sequential steps.  Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009).

> The court must first determine whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator. If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility; no further inquiry by the court is required, and the reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury. If the court finds, however, that the procedures were unnecessarily suggestive, it must then determine whether the identification was nonetheless independently reliable.

Id. (quoting Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001) (internal alterations omitted)).

"The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by officers, and the array's contents." Concepcion, 983 F.2d at 377.  In determining whether an array is impermissibly suggestive, courts assess "whether the picture of the accused so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." Jarrett v. Headley, 802 F. 2d 34, 40-41 (2d Cir. 1986) (internal quotation and alterations omitted).  Use of six photographs has been upheld as not unduly suggestive. United States v. Bennett, 409 F.2d 888, 898 (2d Cir.) cert. denied, 396 U.S. 852 (1969).

In United States v. Bautista, the Circuit affirmed the lower court's conclusion that a photo array in which the defendant's picture was "slightly brighter and slightly more close-up" than the other five photographs in the array was not unduly suggestive. 23 F.3d 726, 730-731 (2d Cir. 1994). There the Circuit noted that each of the six color photographs "depict[ed] a man in a frontal mug-shot . . . of roughly the same age and coloring" and with a moustache. Id. The Circuit found that as a consequence of the similarities in the photographs, "the differences complained of by [defendant] 'would hardly suggest to an identifying witness that [the defendant] was more likely to be the culprit.'" Id. (quoting United States v. Archibald, 734 F.2d 938, 940 (2d Cir. 1984)). Analogously, heterogeneity in the photographs that comprise an array may weigh against a finding that the array is impermissibly suggestive. See United States v. Jones, 652 F.Supp. 1561 (S.D.N.Y. 1986) (photo array not impermissibly suggestive, even though defendant's skin was lighter than skin of others, where variations in tone and hue of all photographs minimized possible reliance on such differences as distinguishing characteristic.)

After carefully reviewing the photo array at issue here, I cannot conclude that the photograph of Zadiriyev so stands out from the other five photographs as to suggest that he is the person suspected by the FBI to have participated in the hijacking. The photo array is comprised of six individuals with similar complexions, hairstyles and facial compositions. Each photograph depicts men of roughly the same age with moderately fair skin and short-cropped dark brown or black hair. Three of the men depicted have blue or green eyes, while the balance, including Zadiriyev, have darker brown eyes. Two of the individuals have short facial hair in the nature of a "5 o'clock shadow" but none sports a moustache, beard or goatee. The photographs are full frontal mug shots, similarly cropped and of a uniform scale. The background of each photograph is gray, albeit of varying shades. To the extent that it is visible, the clothing worn by the men in the photographs is not uniform.[1] In short, Zadiriyev does not stand out from the other five individuals so as to "suggest to an identifying witness that [he] was more likely to be the culprit." Archibald, 734 F.2d at 940.

Zadiriyev complains that the shading of his photograph makes him "stick out like a sore thumb" because five of the six photos have a "yellowish or reddish tint" while his picture is

---

[1] Zadiriyev's counsel argued at the hearing that "at least three out of six" of the individuals depicted are wearing "business attire" and "at least four out of the six are wearing what appears to be a dress or business shirt." Tr. at 34. But the only attire visible in any of the pictures is a small area at the bottom of each picture and the variation in the attire worn by the individuals minimizes its significance. Two of the men are wearing shirts with tight-fitting collars, while two others have loose collars. Zadiriyev and at least one or two of the other men appear to be wearing dark-colored jackets.

"pale, more on the white side." Tr. at 34. His argument falls short, however, because not only is there no uniform tint from which Zadiriyev's photograph stands out, the tint of at least one of the other photographs, photograph "6," is far brighter than that of Zadiriyev. Although the lighting of Zadiriyev's photograph is slightly distinctive and light appears to reflect from his forehead and the left side of his face, the lighting of the other five photographs is inconsistent. For example, photograph "5" is much darker than photograph "6." In short, given that the individuals themselves all resemble one another, the heterogeneity in the coloring and lighting of the photographs is such that the tint of the Defendant's photograph does not cause it to stand out from the others. See Jones, 652 F.Supp. at 1561.

Furthermore, nothing about the circumstances in which the photo array was shown to the witness suggests that the identification was unduly suggestive. The agents followed their standard procedure and informed the witness that it was alright if he did not identify any of the individuals depicted. There is no testimony that suggests the agents pressured the witness to make an identification or took any actions that would suggest the true identity of any of the individuals depicted in the array.

Finally, having concluded that neither the photo array nor the manner in which it was shown to the witness were unduly suggestive, any evidence that the witness may have equivocated in making the identification goes to the weight to be afforded to the identification and is a matter for trial.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to suppress the photographic identification made by a potential prosecution witness is DENIED.

SO ORDERED
June 23, 2009
New York, New York

_____
U.S.D.J.

4